**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| LUSHU WANG,<br><br>                    Petitioner,<br><br>     v.<br><br>DAVID MARIN, et al.,<br><br>                    Respondents. | Case No. EDCV 26-1910-AS<br><br>**ORDER GRANTING UNOPPOSED PETITION** |

On April 17, 2026, Petitioner Lushu Wang ("Petitioner"), an immigration detainee who is in the custody of United States Immigration and Customs Enforcement ("ICE") at the Desert View Annex ICE Processing Facility in Adelanto, California, and is represented by counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") seeking release from custody on the grounds that his re-detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment as well as the Immigration and Nationality Act and the Administrative Procedure Act. (Dkt. No. 1). On April 24, Respondents filed an Answer which states that they "are not presenting an opposition argument at this time." (Dkt. No. 7).

For the reasons set forth below, the Court GRANTS the Petition; ORDERS Respondents to release Petitioner from immigration detention forthwith, under the same conditions to which he was subject prior to his re-detention; and ENJOINS and RESTRAINS Respondents from re-detaining Petitioner absent notice and a pre-deprivation hearing before a neutral arbiter at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.[1]

**BACKGROUND**

Petitioner is a Chinese citizen who entered the United States in April 2022 without inspection or valid entry document and presented himself to border officials, informing them he feared returning to China. (Petition ¶ 7-8). He was detained for about two weeks and then released on conditional parole pursuant to 8 U.S.C. § 1226 upon a determination that he was neither a flight risk nor a danger to the community. (Id. ¶ 9). Upon release, he was issued a Notice to Appear which charged him as a noncitizen present in the United States who has not been admitted or paroled, under 8 U.S.C. § 1182(a)(6)(A)(i). (Id. ¶¶ 9-10).

Petitioner has since resided with his wife in Corona, California, and has complied with all conditions of his release, attended all his court hearings, timely filed his application for

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 3-5).

2

asylum, attended his biometrics appointment, and otherwise obeyed all laws of the United States. (Id. ¶ 11). He was issued a work permit as well as a U.S. Social Security Card and a California driver's license, and he has been working as a truck driver to support himself and his family. (Id.).

On March 26, 2026, without any notice or opportunity to be heard, Petitioner was arrested at his ICE check-in appointment in the San Bernardino ICE field office and then transferred to the Desert View Annex ICE Processing Facility, where he remains at this time. (Id. ¶¶ 12-13).

**DISCUSSION**

Petitioner is entitled to release from custody because his re-detention without prior notice and a hearing violated due process.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment –

3

from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. That liberty interest persists even for those who have been previously detained, and who remain subject to "significant constraints on their liberty or over whose liberty the government wields significant discretion." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."). In such circumstances, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that his liberty "will be revoked only if he fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). For that reason, district courts have found that noncitizens previously released on bond or discretionary parole had a protected liberty interest in remaining out of custody. See, e.g., Pinchi, 792 F. Supp. 3d at 1032; Pablo Sequen v. Kaiser, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025); Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019).

Petitioner, having been released on parole (see Petition ¶ 9), has a protected due process liberty interest in his continued freedom. "The constitution typically 'requires some kind of a hearing before the State deprives a person of liberty or property,'" particularly because the loss of liberty "cannot be fully compensated after the fact." Salcedo Aceros v. Kaiser, 2025

4

WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine what process she is due, the Court considers the following three factors from Mathews v. Eldridge, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As to the first factor, Petitioner has a significant private interest in remaining out of custody. See, e.g., Pinchi, 792 F. Supp. 3d at 1033 (petitioner had substantial private interest "in remaining in her home, continuing her employment, providing for her family, obtaining necessary medical care, maintaining her relationships in the community, and continuing to attend her church"); Ortega, 415 F. Supp. 3d at 970 (petitioner had substantial private interest in remaining on bond, as he was "living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community"); see also Morrissey, 408 U.S. at

482 (a parolee's liberty is "valuable" since it "enables him to do a wide range of things open to persons who have never been convicted of any crime," such as being employed, spending time with family and friends, and "form[ing] the other enduring attachments of normal life").

As to the second factor, "it is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing," as such a hearing provides a crucial "opportunity to determine whether there is any valid basis for [his] detention." Pinchi, 792 F. Supp. 3d at 1035. "The government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025). Particularly here, where Petitioner was previously found to warrant discretionary release from custody, and he has since attended all appointments and complied with all conditions of release, an arrest without a prompt hearing or other procedural safeguard poses a high risk of error, with substantial harm. See, e.g., Pinchi, 792 F. Supp. 3d at 1035 (where petitioner "was detained after more than two years of attending every required immigration hearing and despite her deep community ties and lack of any criminal record," there was "a significant risk that even the two-day curtailment of liberty that [petitioner] already suffered upon her re-detention by ICE was not justified by any valid interest"); Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous

deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia v. Andrews, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))); Aviles-Mena v. Kaiser, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025) (finding that a pre-detention hearing was necessary to reduce the risk of erroneous deprivation where petitioner was previously paroled, and nothing in the record suggested he had become a security or flight risk); Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

Furthermore, "there is no countervailing government interest – the third and final Mathews factor – that supports conducting a bond hearing only after [Petitioner] has been detained, rather than in advance thereof." Pinchi, 792 F. Supp. 3d at 1036. Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040.

On balance, the Mathews factors show that Petitioner was entitled to notice and a hearing prior to being re-detained. See also Zinermon, 494 U.S. at 127 ("Applying [the Mathews] test, the

Court usually has held that the Constitution requires some kind of a hearing <u>before</u> the State deprives a person of liberty." (emphasis in original)); <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing <u>before</u> he is deprived of any significant protected interest.'" (quoting <u>Boddie v. Connecticut</u>, 401 U.S. 371, 379 (1971)) (emphasis in original)). Given Petitioner's significant liberty interest at stake, moreover, the government at such hearing must have the burden to prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. <u>See</u> <u>Singh v. Holder</u>, 638 F.3d 1196, 1203-04 (9th Cir. 2011) (where substantial liberty interests are at stake, government must prove by clear and convincing evidence that noncitizen is a flight risk or a danger to the community to justify denial of bond), <u>abrogated on other grounds by</u> <u>Jennings v. Rodriguez</u>, 583 U.S. 281 (2018); <u>Duong</u>, 800 F. Supp. 3d at 1042 ("[T]he Ninth Circuit has repeatedly held that due process requires the government to prove by clear and convincing evidence that a noncitizen facing detention is a flight risk or danger to the community." (citing <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1199 (9th Cir. 2022))); <u>Petrosyan v. Bondi</u>, 2026 WL 790752, at *1 (C.D. Cal. Mar. 20, 2026); <u>Padilla v. Bowen</u>, 2025 WL 3251368, at *8 & n.3 (C.D. Cal. Nov. 21, 2025).

Having been deprived of that right, Petitioner is entitled to release from detention. <u>See, e.g.</u>, <u>Sompal v. Semaia</u>, 2026 WL 311587, at *2 (C.D. Cal. Feb. 3, 2026) ("[O]rdering a bond hearing without immediate release would not address the harm being done to

Petitioner, who would continue to be held in detention without due process until the bond hearing takes place.").

**ORDER**

Accordingly, the Court GRANTS the Petition; ORDERS Respondents to release Petitioner from immigration detention forthwith, under the same conditions to which he was subject prior to his re-detention; and ENJOINS and RESTRAINS Respondents from re-detaining Petitioner absent notice and a pre-deprivation hearing before a neutral arbiter at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 24, 2026

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

9